```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                                   :
ALFRED DOTY,                       :
                                   :
          Plaintiff,               :    Civ. No. 15-3016 (NLH)
                                   :
     v.                            :    OPINION
                                   :
FCI FT. DIX WARDEN JORDAN          :
HOLLINGSWORTH; UNIT MANAGER        :
BARBARA NEVINS; UNIT OFFICER       :
JASON BAZYDLO; UNKNOWN UNIT        :
OFFICERS #1-#10,                   :
                                   :
          Defendants.              :
_____:
```

APPEARANCES:
Robert M. Miele, Esq.
Burke, Miele & Golden, LLP
40 Matthews St., Suite 209
P.O. Box 216
Goshen, NY 10924,
    Counsel for Plaintiff

David Vincent Bober, Esq.
Office of the United States Attorney
402 E. State Street, Room 430
Trenton, NJ 08608
    Counsel for Defendants

HILLMAN, District Judge

     This matter comes before the Court upon the Motion for Reconsideration filed by Defendants FCI Fort Dix Warden Jordan Hollingsworth and FCI Fort Dix Unit Manager Barbara Nevins of the Court's Opinion and Order denying in part their Motion to Dismiss the Second Amended Complaint. For the reasons explained below, the Court will grant reconsideration in light of the

Supreme Court of the United States' opinion in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), but deny the Motion to Dismiss as to Defendants Hollingsworth and Nevins.

I.  BACKGROUND

Plaintiff Alfred Doty, an inmate currently confined at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), seeking to bring, inter alia, an Eighth Amendment failure to protect claim against Defendants Warden Jordan Hollingsworth, Unit Manager Barbara Nevins, and Unit Officer Jason Bazydlo (the "Fort Dix Defendants").[1]

Plaintiff filed a Second Amended Complaint ("SAC") on July 29, 2016. ECF No. 33. In the Second Amended Complaint, Plaintiff alleges that on and before August 24, 2013, he was incarcerated at FCI Fort Dix and housed in Unit 5711. Id., SAC ¶ 15. Plaintiff states that another inmate at FCI Fort Dix ("Unknown Inmate") was confined to a different housing unit at that time. Id., ¶ 16. Because he was confined to another housing unit, Unknown Inmate was prohibited from entering Unit 5711. Id.

---

[1] Defendant Bazydlo has not joined in the Motion for Reconsideration.

Plaintiff alleges that Unknown Inmate had a known propensity for assaulting other inmates and entering other housing units. "Unknown Inmate had badly assaulted at least one inmate in another housing unit and was also harassing and assaulting at least one inmate in Unit 5711." Id., ¶ 20. "Unknown Inmate had been gaining unauthorized access into Unit 5711 to 'shake down' and threaten another inmate that was assigned to Unit 5711." Id. In addition, "Unknown Inmate had assaulted this other inmate while improperly in Unit 5711." According to Plaintiff, the Fort Dix Defendants knew of Unknown Inmate's violent tendencies involving threats, harassment, and intimidation of other prisoners, as well as his propensity to enter other housing units. Id., ¶¶ 20, 26.

Despite being housed in a different unit, Plaintiff states that on August 24, 2013, Unknown Inmate entered Unit 5711 and assaulted Plaintiff. Prior to the assault on August 24, 2013, "Plaintiff advised Defendant Bazydlo that inmates who were assigned to other housing units were planning on coming to Unit 5711 and that he should do a walk through of Unit 5711." Id., ¶ 21. Defendant Bazydlo "did not conduct a walk through or prevent unauthorized inmates from entering Unit 5711" that day. Id. After his conversation with Defendant Bazydlo, Plaintiff was exiting the restroom of Unit 5711 when he was brutally assaulted with a blunt object by Unknown Inmate. Id., ¶ 22.

Plaintiff suffered "fractures to his forehead, orbital bones, left cheek and teeth," as well as "a crushed sinus cavity, upper hard pallet fracture, and sever bleeding and swelling of the brain." Id. During the assault, Defendant Bazydlo was in the office of the Unit 5711 with the door closed to the rest of the Unit. Id., ¶ 23. When Defendant Bazydlo opened the door to the Unit and saw the injured Plaintiff, Defendant Bazydlo said words to the effect that he "wondered if this had happened as retaliation for Plaintiff reporting to him unauthorized inmates in Unit 5711." Id.

While Plaintiff recovered in the Special Housing Unit ("SHU") from his injuries, Plaintiff discovered another inmate formerly of Unit 5711 who had been attacked by Unknown Inmate and was also recovering in the SHU. Id., ¶ 24. Plaintiff also alleges that his assault was fully investigated and that the Defendants identified the assailant, concluded that he was in Unit 5711 when he should not have been, and eventually transferred Unknown Inmate to another institution. Id., ¶ 25.

Based on these allegations, Plaintiff asserts an Eighth Amendment failure to protect claim against Defendants Warden Jordan Hollingsworth, Unit 5711 Manager Barbara Nevins, and Unit 5711 Officer Jason Bazydlo. Id., ¶¶ 10-12, 40. As to both Moving Defendants, Plaintiff alleges that they (1) knew of Unknown Inmate's violent history of assaulting other inmates;

4

(2) knew of Unknown Inmate's history of accessing other housing units other than his own in order to threat, harass, assault, and intimidate other prisoners; (3) failed to develop and implement adequate safety and security procedures to prevent Unknown Inmate from gaining unauthorized access to Unit 5711; (4) failed to have sufficient guards stationed near the door to Unit 5711; and (5) failed to properly confine Unknown Inmate. Id., ¶¶ 20, 26.

As to Unit Manager Defendant Nevins only, Plaintiff alleges that Defendant Nevins: (1) had a policy in place to leave the front door to Unit 5711 unlocked in between ten minute moves; (2) had a policy in place whereby they failed to monitor the only door with ingress and egress into Unit 5711 during the ten minute moves; (3) failed to monitor the door on August 24, 2013 and allowed Plaintiff's attacker to gain access; and (4) failed to train adequately Defendant Bazydlo to keep the door to Unit 5711 locked or monitor the door during ten minute moves. Id., ¶ 26.

As to Defendant Warden Hollingsworth only, Plaintiff alleges that Defendant Hollingsworth: (1) failed to train adequately Defendant Nevins to keep the door to Unit 5711 locked or monitor the door during ten minute moves; (2) failed to have sufficient guards stationed near the door to Unit 5711; and (3) failed to confine properly Unknown Inmate. Id.

5

Plaintiff seeks actual and exemplary damages in the amount of $5,000,000.00, but does not seek prospective injunctive relief. See id., ¶¶ 51-52.

Defendants moved to dismiss the Second Amended Complaint. ECF No. 37. The Court granted in part the motion, but denied the motion as to the Eighth Amendment failure to protect claim against Defendants Hollingsworth, Nevins, and Bazydlo. See ECF Nos. 45 (opinion), 46 (order). The Court cited at length the standard for a failure to protect claim arising in the context of a Bivens suit, which was laid out by the Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994). See ECF No. 45 at 8-11.

Defendants Hollingsworth and Nevins thereafter moved the Court to reconsider its denial of the motion to dismiss based on the Supreme Court of the United States' recent opinion in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017). ECF No. 48. The Moving Defendants asserted that the Court had overlooked the recently issued Ziglar opinion, and that under Ziglar, the claim against the Moving Defendants is a "new context" for Bivens liability, which relates to their role in policymaking, and the Court should decline to extend a Bivens remedy in such a circumstance. See ECF No. 48-1, Defs.' Br. at 4-5.

Plaintiff opposed this motion by brief. ECF No. 54. In opposition to the Motion, Plaintiff argues that "Plaintiff's Bivens claim is not a 'new context' requiring a special factors

analysis but, rather, analogous to the claim in Carlson v. Green, 446 U.S. 13 (1980)." ECF No. 54, Opp. Br. at 5. In addition, Plaintiff argues that even if the claim were a new Bivens context, there are no 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Id.

The Court issued an order granting the parties leave to file supplemental briefs regarding any recent cases they wished to raise since their initial briefs were filed. ECF No. 66. Only Defendants filed a supplemental brief. ECF No. 67. None of the cases identified involves an Eighth Amendment failure to protect claim.

## II. STANDARD OF REVIEW

A court may grant a motion for reconsideration if the moving party shows one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Johnson v. Diamond State Port Corp., 50 F. App'x 554, 560 (3d Cir. 2002) (quoting Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).

## III. DISCUSSION

The Supreme Court of the United States' opinion in Ziglar changed the landscape of civil rights remedies against federal

employees.  Whereas prior to Ziglar, courts construed the scope of cognizable suits brought pursuant to Bivens as coextensive with those brought pursuant to 42 U.S.C. § 1983, now district courts are directed first to analyze Bivens suits to determine whether the suit seeks to extend Bivens to "new contexts" and, if so, whether there are "special factors" that would counsel against extending Bivens liability to the new context.  Ziglar thus represents an intervening change in the controlling law.  As such, the Motion for Reconsideration will be granted and the Court will reconsider the Motion to Dismiss as to the Moving Defendants.

In Ziglar, the Supreme Court explained that it has only recognized a Bivens remedy in three cases: (1) Bivens itself, which implied a damages action to compensate persons whose Fourth Amendment right to be free from unreasonable searches and seizures was violated by federal officers; (2) Davis v. Passman, 442 U.S. 228 (1979), which recognized a right under the Due Process Clause of the Fifth Amendment for an administrative assistant to sue a member of Congress for her firing because she was a women; and (3) Carlson v. Green, 446 U.S. 14 (1980), in which the Court held that the Eighth Amendment's Cruel and Unusual Punishment Clause provides a damages remedy for failure to provide adequate medical care.  Ziglar, 137 S. Ct. at 1854.  "These three cases--Bivens, Davis, and Carlson--represent the

only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar, 137 S. Ct. at 1855. As such, "expanding the Bivens remedy" beyond these contexts "is now a 'disfavored' judicial activity." Id.

Because expansion of Bivens is "disfavored," courts must use "caution before extending Bivens into any new context." Id. "A Bivens remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." Id. A context is "new" - and therefore requires a special factors analysis - if it is "different in a meaningful way from previous Bivens cases decided by this Court." Id. at 1859.

Plaintiff's Eighth Amendment failure to protect claim against the Moving Defendants is not a "new context" of Bivens liability. In Ziglar, the Supreme Court specifically identified a claim arising under the Eighth Amendment's Cruel and Unusual Punishment clause as one of the contexts it has recognized as providing an implied damages remedy under Bivens. See Ziglar, 137 S. Ct. at 1855 (citing Carlson). The claim in Carlson involved deliberate indifference to a prisoner's medical needs, and the claim here involves deliberate indifference to a prisoner's safety, both of which use the same sort of deliberate indifference analysis and both of which arise under the Eighth Amendment's Cruel and Unusual Punishment Clause. Compare

9

Estelle v. Gamble, 429 U.S. 94, 104 (1976), cited by Carlson, 446 U.S. at 17, with Farmer, 511 U.S. at 835 (citing Estelle, 429 U.S. at 104). The Supreme Court itself outlined the application of the deliberate indifference standard to failure to protect claims in Farmer v. Brennan, 511 U.S. 825 (1994), a case in which a federal prisoner brought a Bivens suit against federal prison employees including the warden. The claim is thus not different in a meaningful way from Carlson and Farmer.[2] Notably, in Carlson, the Supreme Court stated, "we have here no explicit congressional declaration that persons injured by federal officers' violations of the Eighth Amendment may not recover money damages from the agents but must be remitted to another remedy." 446 U.S. at 19. Nothing in the text of the Carlson opinion suggests that the Supreme Court meant to limit its decision only to medical treatment claims arising under the Eighth Amendment.

The Moving Defendants argue that the claim at issue is a "new context" because it seeks to impose Bivens liability based on allegations regarding the policymaking of supervisory officials. See ECF No. 48-1, Defs.' Br. at 13-14. Although there are allegations in the Second Amended Complaint regarding

---

[2] It would be irrational of the Court to assume that the Supreme Court would outline a merits analysis for a cause of action that does not exist and over which it lacked subject-matter jurisdiction.

policies and policymaking, the allegations against the Moving Defendants are that they personally knew of the Unknown Inmate's history and failed to protect Plaintiff from him, which the Court accepts as true for the purpose of this Motion to Dismiss. See ECF No. 33, SAC ¶¶ 20, 26.  Such a claim bears little resemblance to the national security policies enacted after 9/11 by high-level executive officials, which were at issue in Ziglar.  137 S. Ct. at 1858-59.  Because the claim at issue is not a "new context" for Bivens liability, the Moving Defendants' Motion to Dismiss will be denied.

IV. CONCLUSION

For the reasons set forth above, the Motion for Reconsideration will be granted to the extent that Court has considered Plaintiff's claims in light of Ziglar.  However, after consideration of Ziglar and upon reconsideration of the Motion to Dismiss, ECF No. 37, the Motion of Defendants Hollingsworth and Nevins will be denied.  An appropriate Order follows.

Dated: March 27, 2018          s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.