UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
ALFRED DOTY,                        :
                                    :
           Plaintiff,               :     Civ. No. 15-3016 (NLH) (JS)
                                    :
      v.                            :     OPINION
                                    :
FCI FT. DIX WARDEN JORDAN           :
HOLLINGSWORTH; UNIT MANAGER         :
BARBARA NEVINS; UNIT OFFICER        :
JASON BAZYDLO; UNKNOWN UNIT         :
OFFICERS #1-#10,                    :
                                    :
           Defendants.              :
_____:

APPEARANCES:

Paul E. Svensson, Esq.
Michael K. Burke, Esq.
Hodges Walsh Messemer & Burke, LLP
55 Church Street, Suite 211
White Plains, NY 10601,

      Counsel for Plaintiff

Craig Carpenito, United States Attorney
Anne B. Taylor, Assistant United States Attorney
Office of the United States Attorney
401 Market Street, PO Box 2098
Camden, NJ 08101

      Counsel for Defendants

HILLMAN, District Judge

      This case concerns an assault that Plaintiff Alfred Doty, a

former federal prisoner, suffered at the hands of another inmate

while incarcerated at FCI Fort Dix ("Fort Dix"), New Jersey.  In

the second amended complaint ("SAC"), Plaintiff alleges that

former Fort Dix Warden Jordan Hollingsworth, FCI Fort Dix Unit Manager Barbara Nevins, and Unit Officer Jason Bazydlo ("Defendants") failed to protect him from the assault in violation of the Eighth Amendment. ECF No. 33.

At issue is Defendants' Motion for Summary Judgment, which is ripe for adjudication. See ECF No. 77. The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this case concerns a federal question. For the reasons that follow, the Court will grant the Motion.

I.    BACKGROUND

      A.    Undisputed Facts

            1. General Operations and Procedures at FCI Fort Dix

FCI Fort Dix is a federal prison which houses low security, sentenced federal inmates. ECF No. 82-1 ¶ 3. Inmates at Fort Dix are assigned to one of several housing units in the East or West Compound. ECF No. 85-1 at 18 ¶ 1. The compounds are distinct and secure areas consisting of several buildings including dormitory style housing, inmate recreation, education, and food services. ECF No. 82-1 ¶ 3. Inmates are prohibited from entering any housing unit other than the one to which they are assigned unless they have received authorization. ECF No. 85-1 at 18 ¶ 1. Inmates found in a housing unit other than their assigned one without authorization should be issued an incident report and are subject to disciplinary action. Id.

The inmates can move about their compound during ten-minute "moves." ECF No. 82-1 ¶ 4. After the move has ended, the inmate must wait until the next move to relocate. Id. However on weekend afternoons, Fort Dix operates as an "open compound" and inmates may move freely around their compound for approximately an hour until afternoon recall. Id. ¶ 6. During open compound, entrances to the housing units are left unlocked. Id. ¶ 7. The officers are supposed to monitor the doors during moves and should prevent unauthorized inmates from entering the housing units. Id. ¶ 9. The housing officer must permit inmates to get to their next destination and therefore must track entry to the housing unit as much as possible while also allowing inmates to change location. Id. ¶ 10. The officers use census counts and other tools to check inmates' location throughout the day. Id. ¶ 13. Correctional Officers and other prison employees are "responsible for the accountability of all inmates in their assigned areas, details, and housing units." ECF No. 85-1 at 18 ¶ 2. Any officer who does not take action to maintain inmate accountability could be disciplined. Id. at 19 ¶ 4.

2. Events up to and including the assault

On Saturday, August 24, 2013, Plaintiff was assigned to Housing Unit 5711 ("Unit 5711") within the East Compound. ECF No. 82-1 ¶ 14. Defendant Jason Bazydlo was a correctional

officer serving as the Unit Officer for Unit 5711 at that time.
Id. ¶ 15.  He was responsible for approximately 366 inmates in
the three-floor unit.  ECF No. 85-1 at 22 ¶ 17.  He made it his
practice to conduct random and irregular rounds throughout the
unit to avoid establishing a pattern that inmates could
anticipate.  Id. at 21 ¶ 11.  During moves, he sometimes stayed
by the door and sometimes moved throughout the unit.  Id. ¶ 12.
He also did this during the weekend lunch period.  Id.

Before August 24, 2013, Officer Bazydlo and Plaintiff had
only interacted with each other when Officer Bazydlo delivered
Plaintiff's mail.  ECF No. 82-1 ¶ 16.  Plaintiff never told
Officer Bazydlo that he felt his physical safety was at risk
before August 24, 2013.  Id.  Plaintiff also had never spoken or
otherwise communicated with Unit Manager Barbara Nevins or
Warden Jordan Hollingsworth about his personal safety prior to
August 24, 2013.  Id. ¶¶ 17-18.

On Thursday, August 22, 2013, another inmate woke Plaintiff
up from a nap to ask if Plaintiff wanted to fight.  Id. ¶ 19.
The inmate did not reside in Unit 5711.  Id. ¶ 20.  There was no
physical altercation at that time, and Plaintiff did not report
to Defendants or anyone else at Fort Dix that he had been
physically threatened by an inmate who did not reside in his
housing unit.  Id. ¶ 22.  Plaintiff testified that he did not
fear for his physical safety after the August 22 incident.  Id.

4

¶ 23. Plaintiff did not receive any threats on Friday, August 23, 2013. Id. ¶ 24.

On the morning of August 24, 2013, an intoxicated inmate was found in Unit 5711 and was scheduled to be transported to the Special Housing Unit ("SHU"). ECF No. 85-1 at 22 ¶ 18. Officer Bazydlo was not yet on duty when the intoxicated inmate was discovered. Id. No inmates from other units had prior permission to be in Unit 5711 on August 24, 2013. Id. ¶ 19. After the 10:00 morning count and before lunch, Plaintiff went down to the sally port, an area around the door where inmates congregate ahead of leaving the building. ECF No. 82-1 ¶¶ 25-26. Plaintiff arrived at the sally port first and was alone with Officer Bazydlo. Id. ¶ 27. Officer Bazydlo later quoted Plaintiff as telling him that "If you go upstairs later with a breathalyzer, you'll catch a lot of them. Hooch is getting bad here, there is a whole black market and it's getting violent." Id. ¶ 31. This was the first time Plaintiff had reported the production of intoxicants in the unit or expressed concerns about unauthorized inmates. Id. ¶ 33. Although Plaintiff apparently witnessed people in his unit drinking homemade intoxicants several times a week, he had never seen them be violent or threaten violence. Id. ¶ 36. Plaintiff did not tell Officer Bazydlo that he felt at risk of physical harm. Id. ¶

29.  Plaintiff stopped talking to Officer Bazydlo when other inmates started filling the sally port.  Id. ¶ 32.

Officer Bazydlo believed Plaintiff's report to be a general statement about potential violence that was not worth reporting to a lieutenant.  ECF No. 85-1 at 23 ¶ 20.  He would be required to report a specific threat of violence to his lieutenant.  Id. at 21 ¶ 14.  He could not recall what he did in response to Plaintiff's report, but he testified that he would not have deviated from his normal routine of making random and irregular rounds throughout the unit.  Id. at 23 ¶ 21.

Plaintiff went to lunch following his conversation with Officer Bazydlo, and then went to the pill line.  ECF No. 82-1 ¶ 37.  He returned to his housing unit after receiving his medication.  Id. ¶ 38.  As it was a Saturday afternoon, Fort Dix was operating as an open compound and Plaintiff was able to move freely around without waiting for a ten-minute move.  Id. ¶ 39.  When Plaintiff returned to the housing unit, the door was unlocked.  Id. ¶ 40.  Plaintiff did not see a guard at the entrance and the door to the guard's office was closed.  Id.

Plaintiff went to the restroom on the first floor, down the hall from the entrance door.  Id. ¶ 41.  Upon exiting the stall, Plaintiff was confronted by an inmate he identified as "Jefferies."  Id. ¶ 42.  Jefferies was not housed in Unit 5711 and was not authorized to be in that housing unit on August 24,

2013. Id. ¶ 43. Jefferies is also not the inmate who had awoken Plaintiff the day before. Id. ¶ 21. Jefferies had been waiting for Plaintiff and said he heard Plaintiff had problems with him. Id. ¶ 44. Plaintiff told Jefferies that he did not have a problem with him, but he did have a problem with the way Jefferies treated Plaintiff's friend and roommate, Russell Ochocki. Id. ¶ 45. Plaintiff claimed that Jefferies had been pressuring Ochocki to buy commissary for him under threat of physical assault. Id. ¶ 46. Plaintiff asserted that Jefferies had slapped Ochocki, leaving a bruise, and stolen Ochocki's commissary items when Ochocki did not buy the items Jefferies requested. Id. ¶ 47. This incident was never reported to the officials at Fort Dix. Id. Plaintiff and Jefferies had never spoken to each other before the confrontation in the bathroom. Id. ¶ 48.

The last thing Plaintiff remembers about the bathroom confrontation is that Jefferies said something to the effect of "you are nothing but chomos," and Plaintiff responded that "you don't know anything about me." Id. ¶ 49. "Chomos" is a slang term for "child molester." Id. Around 12:50 in the afternoon, Jefferies assaulted Plaintiff, causing Plaintiff to lose consciousness. Id. ¶ 50. Plaintiff does not know what he was assaulted with, and Jefferies was gone by the time Plaintiff regained consciousness. Id. ¶ 51. Plaintiff testified that

when he went to the housing unit officer's office after he was assaulted, he saw another officer with Officer Bazydlo. Id. ¶ 52. Plaintiff further testified that Officer Bazydlo said to that other officer: "I hope this isn't in retaliation for what he told me this morning." Id.[1]

Jefferies' assault on Plaintiff caused Plaintiff to sustain a fractured skull, fractured orbital bones, fractured left cheek, split hard pallet, a broken tooth, and lacerations on his upper and lower lips. Id. ¶ 53. Plaintiff did not know Jefferies was upset with him until immediately before Jefferies assaulted Plaintiff in the bathroom on August 24, 2013. Id. ¶ 54. Plaintiff testified that he met another inmate who had been assaulted by Jefferies, but he did not know who that inmate is and did not know if any of the Defendants were aware that Jefferies had assaulted another inmate. Id. ¶ 55.

3. Investigation

As part of the investigation into the assault, Special Investigative Section Department Lieutenant Joyce Tucker showed Plaintiff a photo array and asked if he could identify his assailant. Plaintiff declined to identify Jefferies from the photo array because he was afraid of retaliation. Id. ¶ 57; ECF

---

[1] The Court notes that Officer Bazydlo denies being in his office with another officer and does not recall making this statement. ECF No. 82-4 103:24 to 104:2. This dispute of fact is not material.

No. 85-1 at 23 ¶ 23. Lieutenant Tucker did not save the photo
array because the photographs did not result in an
identification. ECF No. 85-1 at 24 ¶ 27. There was a
surveillance camera positioned outside of Unit 5711 that would
have recorded anyone entering and exiting the unit through the
main door on August 24, 2013. Id. ¶ 25. Lieutenant Tucker
reviewed footage from that camera, which was recorded around the
time of the assault, but it is unknown what happened to the
video. Id. ¶ 26. Prison personnel later concluded that a group
of inmates from Baltimore was behind the assault. Id. ¶ 24.
Some of those inmates lived in Unit 5711, others did not. Id.

         4.   Supervisory Defendants

     In August of 2013, Barbara Nevins was a Unit Manager
responsible for the administrative oversight of ten staff
members, including the case managers, counselors, and unit team.
ECF No. 82-1 ¶¶ 70-71. Much of Unit Manager Nevins' work was
administrative, such as overseeing the paperwork for transfers
and halfway house referrals. Id. ¶ 72. She was not the
immediate supervisor of the correctional staff officers. Id. ¶
73.

     Unit Manager Nevins was not working on Saturday, August 24,
2013. Id. ¶ 76. She received a phone call that afternoon
informing her that an inmate had been assaulted in her housing
unit; she was asked to come to the prison. Id. After her

arrival at Fort Dix, she walked around the unit and informally talked to other inmates to keep the atmosphere calm. Id. ¶ 77. She was not involved in the formal investigation of the assault and did not speak to Officer Bazydlo about the assault. Id. ¶ 78. Plaintiff did not speak with Unit Manager Nevins before August 24, 2013 or inform her that he felt at risk of assault. Id. ¶ 79. Unit Manager Nevins learned for the first time that inmates were coming into Unit 5711, without authorization, to visit inmates housed in 5711 after August 24, 2013. Id. ¶ 80.

During his tenure as Warden of Fort Dix, Jordan Hollingsworth was responsible for overseeing the management of the facility. Id. ¶ 81. Much of his time was consumed by administrative matters, including staffing matters, although he would be notified of certain assaults. Id. ¶ 82. Warden Hollingsworth did not control the Fort Dix budget and would have preferred to hire more officers throughout his tenure if he could have. Id. ¶ 82. The correctional services chain of command consisted of Warden Hollingsworth, associate wardens, a captain, lieutenants, and correctional officers. Id. ¶ 84.

Warden Hollingsworth did not know Officer Bazydlo, but he did know Unit Manager Nevins. Id. ¶ 85. Prior to August 24, 2013, Plaintiff had never spoken or interacted with Warden Hollingsworth in any way; he never expressed to Warden Hollingsworth any concern that he felt he was at a risk for

assault.  Id. ¶ 86.  Warden Hollingsworth does not recall

whether he was contacted about the assault on Plaintiff when it

happened.  Id. ¶ 87.

II.  STANDARD OF REVIEW

Summary judgment should be granted when the pleadings,

depositions, answers to interrogatories, admissions on file, and

affidavits show that there is no genuine dispute as to any

material fact and that the moving party is entitled to a

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed

fact is material when it could affect the outcome of the suit

under the governing substantive law.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the

evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  Id. at 250.  The Court should view the

facts in the light most favorable to the non-moving party and

make all reasonable inferences in that party's favor.  Hugh v.

Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a

genuine issue concerning any material fact.  See Celotex Corp.

v. Carrett, 477 U.S. 317, 323 (1986).  Once the moving party has

satisfied its burden, the non-moving party, "must present

affirmative evidence in order to defeat a properly supported

motion for summary judgment."  Anderson, 477 U.S. at 257.

"While the evidence that the non-moving party presents may be

either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

III. DISCUSSION

The sole remaining claim in the SAC is Plaintiff's failure to protect claim under the Eighth Amendment. The principal issues to be decided are (1) whether Defendants are entitled to summary judgment on Plaintiff's claims that Officer Bazydlo failed to reasonably respond to Plaintiff's warning about the possibility of violence from intoxicated or unauthorized inmates in Unit 5711 and that Warden Hollingsworth and Unit Manager Nevins implemented inadequate policies to prevent unauthorized inmates from entering Unit 5711, and (2) to the extent there may

have been a violation, are Defendants entitled to qualified immunity.

A.    Failure to Protect

"[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "While 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners,' injury at the hands of a fellow prisoner itself does not amount to an Eighth Amendment violation." Counterman v. Warren Cty. Corr. Facility, 176 F. App'x 234, 238 (3d Cir. 2006) (quoting Farmer, 511 U.S. at 833-34).

"[T]o establish a failure-to-protect claim, an inmate must demonstrate that (1) he is 'incarcerated under conditions posing a substantial risk of serious harm'; and (2) the prison official acted with 'deliberate indifference' to his health and safety." Paulino v. Burlington Cty. Jail, 438 F. App'x 106, 109 (3d Cir. 2011) (per curiam) (quoting Farmer, 511 U.S. at 834). "[D]eliberate indifference is a subjective inquiry, while risk of harm is evaluated objectively." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (citing Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003)). To prove the

objective component of his claim, Plaintiff must establish (1) the seriousness of the injury; (2) a sufficient likelihood that serious injury will result under the circumstances present; and (3) the risks associated with the circumstances under which the injury occurred violate contemporary standards of decency.  Id. at 257.

Defendants concede that Plaintiff suffered a serious injury, but they argue "there is no evidence of a sufficient likelihood that serious injury would result under the circumstances present during Plaintiff's incarceration, or that the risks associated with the circumstances present violated contemporary standards of decency."  ECF No. 77-1 at 41.

Defendants further argue that Plaintiff cannot meet his burden of proof on the subjective deliberate indifference component.  In Farmer, the Supreme Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"  511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  "[S]ubjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official

must have known of the risk." Beers-Capitol v. Whetzel, 256
F.3d 120, 133 (3d Cir. 2001). Defendants assert Plaintiff
cannot show that they disregarded a known risk to his safety.

     1.   Officer Bazydlo

Plaintiff argues that Officer Bazydlo's "individual
practices as a housing unit officer as well as his response to
Mr. Doty's report amounted to deliberate indifference of
substantial risks to Mr. Doty and the inmates within Unit 5711."
ECF No. 82 at 15. "Having full knowledge that inmate
accountability was a top safety concern as expressed in the
institutional supplements coupled with his own admission that
the housing units were understaffed, Bazydlo consciously
disregarded the requirement to man the door during inmate move
periods with full knowledge of the risks in not doing so." Id.
at 16. "The risk that unaccounted inmates would be free to
enter and exit Unit 5711 during 10-minute moves and the entire
hour that the door was open during lunch on August 24, 2013, is
obvious and Bazydlo's knowledge of that is fairly inferable."
Id.

Plaintiff cannot establish that Officer Bazydlo failed to
protect him in violation of the Eighth Amendment. There is no
evidence in the record that Officer Bazydlo "knew of, but
disregarded, 'an objectively intolerable risk of harm.'"
Counterman v. Warren Cty. Corr. Facility, 176 F. App'x 234, 240

(3d Cir. 2006)(emphasis in original) (quoting <u>Farmer</u>, 511 U.S. at 846). Plaintiff admitted he was not aware that Jefferies was upset with him until just before the assault in the bathroom. ECF No. 77-4 at 80:11-14. He also admitted the incident between Jeffries and Russell Ochocki, which Plaintiff did not witness, had not been reported to prison authorities. <u>Id.</u> at 71:12-13, 25 to 72:2. Plaintiff also could not identify the other inmate allegedly assaulted by Jeffries, nor could he state with certainty that Officer Bazydlo knew about the prior assault. <u>Id.</u> at 93:4-14, 97:5-7. Plaintiff did not report the August 22 incident, in which an inmate who did not live in Unit 5711 woke Plaintiff up from a nap to ask if he wanted to fight, to Officer Bazydlo and admitted that he did not fear for his physical safety. <u>Id.</u> at 47:9-19.

Plaintiff's "warning" to Officer Bazydlo did not convey a substantial threat of violence. Plaintiff testified that he told Officer Bazydlo "that there were people from other units coming into the building and that there was a lot of wine being made and that they were drinking. There are parties." <u>Id.</u> at 54:8-11. He "suggested that they do a search of the building." <u>Id.</u> at 54:25. He stated this was the first time he had ever told prison authorities about his concerns. <u>Id.</u> at 56:6-8. Plaintiff admitted he did not tell Officer Bazydlo that he felt at risk of physical harm and that he had never seen any

16

intoxicated inmates become violent or threaten violence.  Id. at
79:11-13, 19-22.

Plaintiff's argument against Officer Bazydlo is in essence
an argument that Officer Bazydlo should have known there was a
substantial risk of serious harm to the inmates of Unit 5711
based on the officer-to-inmate ratio and Plaintiff's warning
that there was alcohol being made in the unit by inmates who
were not supposed to be there.  However, "the mere presence of
circumstances from which a reasonable person could infer 'an
excessive risk to inmate health or safety' is insufficient;
rather, the official must actually make the inference and
disregard it."  Counterman, 176 F. App'x at 238 (emphasis in
original) (quoting Farmer, 511 U.S. at 837).  There is no
evidence in the record that Officer Bazydlo was aware of a
specific risk from Jeffries, nor is there circumstantial
evidence that there was an obvious, general danger to inmates in
Plaintiff's situation.  See Beers-Capitol v. Whetzel, 256 F.3d
120, 131 (3d Cir. 2001).

Even if one assumes that Bazydlo had ignored Plaintiff's
warnings about homemade alcohol and its attendant risks to
inmate safety, that risk was not the one that ripened into
Jefferies's assault on Plaintiff.  Jefferies was apparently
angry at Plaintiff over his defense of Ochocki, his cellmate, a
brewing dispute that Bazydlo knew nothing about.  To hinge

liability on harm arising from an unreported risk simply because
of a vague warning about an unrelated risk would turn the
Defendants into Plaintiff's protector against all risks.  The
physical harm here is indeed substantial and horrific, but to
hold these Defendants responsible something more is required.

While a more generalized risk could be enough, here
Plaintiff has provided no evidence that there was a
"longstanding, pervasive, well-documented, or expressly noted"
history of inmate violence caused by inmates being in units
other than their own.  Id.  Mere knowledge that inmates were in
Unit 5711 without authorization is not enough "to create a
subjective awareness, on [Officer Bazydlo's] part, of an
objectively excessive risk to [Plaintiff's] safety."
Counterman, 176 F. App'x at 239.  Plaintiff himself admitted
that he was not in fear for his physical safety prior to this
incident.  In the absence of a genuine issue of material fact,
the Court grants summary judgment to Officer Bazydlo.

2.  Warden Hollingsworth and Unit Manager Nevins

Plaintiff's Eighth Amendment claims against Warden
Hollingsworth and Unit Manager Nevins also fail.  He argues they
are liable as they implemented deficient policies "regarding 10
minute moves and the hour-long open door during lunch on the
weekends."  ECF No. 82 at 24.  "Both Nevins and Hollingsworth
would have known that these polices were untenable given the

18

shortage of officers and the escalating issues throughout FCI
Fort Dix." <u>Id.</u>

In order to hold Warden Hollingsworth and Unit Manager
Nevins liable based on their policies or practices, Plaintiff
must identify a specific policy or practice that they failed to
employ and show that: (1) the existing policy or practice
created an unreasonable risk of injury; (2) they were aware that
there was an unreasonable risk; (3) they were indifferent to
that risk; and (4) the injury resulted from the policy or
practice. <u>Beers-Capitol</u>, 256 F.3d at 134 (citing <u>Sample v.
Diecks</u>, 885 F.2d 1099 (3d Cir. 1989)).

Plaintiff can satisfy this standard by either showing that
Warden Hollingsworth and Unit Manager Nevins "failed to
adequately respond to a pattern of past occurrences of injuries"
like his, or by "showing that the risk of constitutionally
cognizable harm was 'so great and so obvious that the risk and
the failure of supervisory officials to respond will alone'
support finding that the four-part test is met." <u>Id.</u> at 136-37
(quoting <u>Sample</u>, 885 F.2d at 1118).

Plaintiff cannot prove Warden Hollingsworth and Unit
Manager Nevins were aware of an unreasonable risk of injury for
the same reasons he could not prove Officer Bazydlo was actually
aware of an unreasonable risk. Unit Manager Nevins did not know
until after August 24, 2013 that inmates were coming into Unit

5711 without authorization.  ECF No. 77-4 at 31:17-22.

Plaintiff did not inform Warden Hollingsworth or Unit Manager

Nevins that he felt unsafe in the unit, and there was no

longstanding, obvious history of inmate attacks caused by

unauthorized inmates in units other than their own.

Plaintiff cannot rely on the subsequent change in the move

policy to prove awareness of a risk. Fed. R. Evid. 407.  Nor

does the fact that the video footage of the entryway and the

photo array are unavailable warrant a spoliation inference in

Plaintiff's favor.  "The spoliation inference is an adverse

inference that permits a jury to infer that 'destroyed evidence

might or would have been unfavorable to the position of the

offending party.'"  Mosaid Techs. Inc. v. Samsung Elecs. Co.,

348 F. Supp. 2d 332, 336 (D.N.J. 2004) (quoting Scott v. IBM

Corp., 196 F.R.D. 233, 248 (D.N.J. 2000)).  "For the rule to

apply, it is essential that the evidence in question be within

the party's control.

Further, it must appear that there has been an actual

suppression or withholding of the evidence." Brewer v. Quaker

State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995) (internal

citation omitted).  The photo array was administered by

Lieutenant Tucker, who is not a party to this action.  There is

no evidence Defendants had control over the video footage or

that they actually suppressed the footage.  Therefore, spoliation sanctions are not warranted.

Because there are no genuine issues of material fact, Warden Hollingsworth and Unit Manager Nevins are entitled to judgment as a matter of law.

### 3.    Unknown Officers

The SAC also raises claims against Unknown Unit Officers 1-10.  Despite the close of discovery some months ago, Plaintiff has failed to identify these John or Jane Doe defendants. Because Plaintiff has failed to identify them and because the time for doing so has since past, the Court must dismiss them without prejudice on its own motion pursuant to Federal Rule of Civil Procedure 21.

Federal Rule of Civil Procedure 21 provides that "on motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.  See also Blakeslee v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009) (affirming dismissal of Doe defendants pursuant to Rule 21).  "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified.  If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." Id.  See also Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37

(E.D.Pa. 1990) ("Fictitious parties must eventually be dismissed
. . . if discovery yields no identities.").

Plaintiff has had more than enough time to allow him to
identify the individual John and Jane Doe defendants and
thereafter to amend the complaint.  Plaintiff has failed to do
so.  As such, the Court must dismiss the John and Jane Doe
defendants.  See Blakeslee, 336 F. App'x at 250-51; Adams v.
City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (holding
that, after a reasonable period of discovery has passed, "[i]t
is appropriate, before proceeding to trial, to eliminate [the]
fictitious defendants from [an] action under Fed. R. Civ. P.
21.").

    B.    Qualified Immunity

Defendants further argue they are entitled to qualified
immunity on Plaintiff's Eighth Amendment claim.  "Qualified
immunity shields government officials from civil damages
liability unless the official violated a statutory or
constitutional right that was clearly established at the time of
the challenged conduct."  Taylor v. Barkes, 135 S. Ct. 2042,
2044 (2015) (internal citation and quotation marks omitted).
The first prong of the analysis "asks whether the facts, [t]aken
in the light most favorable to the party asserting the injury,
... show the officer's conduct violated a [federal] right[.]"
Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (internal quotation

marks and citations omitted) (alterations and omissions in original). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 656 (internal citation and quotation marks omitted). "Courts have discretion to decide the order in which to engage these two prongs." Id.

As the Court grants summary judgment on the merits, it is not necessary to address the qualified immunity question beyond noting that Plaintiff has not proven a violation of a constitutional right.

IV.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted.  An appropriate Order follows.


Dated:  November 25, 2019          s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.